# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| WARREN RICHARDS, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>SHEIN DISTRIBUTION CORPORATION,<br><br>Defendant. | No: 1:25-cv-01385-TWP-TAB<br><br>Hon. Tanya Walton Pratt<br><br>Hon. Magistrate Tim A. Baker<br><br>**ORAL ARGUMENT REQUESTED** |

## SHEIN DISTRIBUTION CORPORATION'S
## MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

## **PRELIMINARY STATEMENT**

Plaintiff brings a putative class action against Shein Distribution Corporation ("Shein") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), contending he received text messages from Shein despite that he is on the national do not call list. Plaintiff asserts one claim under 47 U.S.C. § 227(c)(5) through the TCPA's corresponding regulation, 47 C.F.R. §§ 64.1200(c)(2) (the do-not-call or "DNC" registry regulation). The problem with Plaintiff's claim is that the provision at issue does not apply to text messages, but applies only to "telephone calls." 47 U.S.C. § 227(c)(5). Plaintiff's claim must thus be dismissed with prejudice.

The Supreme Court made clear last year in overturning *Chevron* that "every statute's meaning is fixed at the time of enactment." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) (internal quotation and citation omitted). The plain language of the TCPA and its history indicate the term "telephone call" could not have been intended to cover text messages, which did not exist at the time the TCPA was enacted. Indeed, the two courts to evaluate this issue in earnest post-*McLaughlin Chiropractic* readily determined "[t]ext messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025) *on appeal* No. 25-2398 (7th Cir. July 21, 2025);[1] *Davis v. CVS Pharmacy, Inc*., -- F. Supp. 3d --, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) ("Certainly, no ordinary person would think of a text message as a '*telephone* call.'") (emphasis in original). Nor would one confuse a text message with a telephone call in modern parlance. The term "telephone call" simply does not cover text messages. While technology usage has shifted since 1991, it is for Congress alone to expand or alter the TCPA.

---

[1] Shein has simultaneously herewith moved to stay this action pending the outcome of the *Jones* appeal, which, if the Seventh Circuit affirms, would be dispositive of this action.

Plaintiff is only endeavoring to bring this claim because the Federal Communications Commission ("FCC") previously issued orders expanding the term "call" under an entirely different provision of the TCPA (47 U.S.C. § 227(b)) to include text messages. Even if this FCC interpretation was potentially relevant to the claim at hand (brought under 47 U.S.C. § 227(c)(5)), on June 20, 2025, the Supreme Court issued its decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, holding trial courts are "not bound by the FCC's interpretation of the TCPA." *See* 606 U.S. 146, 168 (2025). Taken in conjunction with *Loper Bright*, the FCC's view is not controlling, nor is any deference owed. This Court must utilize the "best" reading as "if no agency were involved" to interpret the TCPA. *Loper Bright*, 603 U.S. at 400. And this Court must use the best reading of the TCPA as of 1991, when it was enacted, unconstrained by the views of the FCC and the modern shift in communication preferences. *See id.* The "best" interpretation of "telephone call" is that it is entirely distinct from a "text message." Indeed, other provisions of the TCPA (47 U.S.C. § 227(e)) specifically apply to text messages, evidencing that Congress is well aware of the distinction between a "telephone call" and a "text message."

This case should be dismissed with prejudice. Plaintiff simply cannot avail himself of the claim at issue, which is evident from the face of Plaintiff's Complaint.

**BACKGROUND**

Plaintiff's initiated this putative class action on July 12, 2025. (Dkt. 1.) Plaintiff's single-count Complaint is simple. Plaintiff contends he received three text messages from Shein without his consent despite that he registered on the national do-not-call registry. (*Id.* ¶¶ 15-22.) Plaintiff's Complaint rests exclusively on the alleged receipt of three text messages, which Plaintiff portrays (in a legal conclusion) as "calls." (*Id.* ¶ 55.) Plaintiff asserts one claim under 47 U.S.C. § 227(c)(5), through the corresponding regulation found at 47 C.F.R. § 64.1200(c)(2). (*Id.* ¶¶ 53-61.) Plaintiff also seeks to represent a putative nationwide class, remarkably reaching back to 2021. (*Id.* ¶ 25.)

2

**LEGAL STANDARD**

Under Rule 12(b)(6), courts must dismiss a complaint where it does not "provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In other words, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). It is axiomatic that "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). In evaluating 12(b)(6) motions, the Supreme Court has urged courts "to draw on [their] judicial experience and common sense." *Id*.

**ARGUMENT**

**I.    THE TCPA MUST BE INTERPRETED AS WRITTEN IN 1991, UNCONSTRAINED BY THE FCC'S ORDERS.**

The Supreme Court issued two recent decisions affecting a sea of change in statutory interpretation. Last year, the Supreme Court eliminated *Chevron* deference, returning courts to their traditional function to reach the "best" interpretation of a statute. *Loper Bright*, 603 U.S. at 400. Courts must utilize "the reading the court would have reached if no agency were involved." *Id.* (internal quotations and citation omitted). Critically, "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

This term, the Supreme Court issued its decision in *McLaughlin Chiropractic*, eliminating the Hobbs Act as a hurdle to interpreting the TCPA. *See* 606 U.S. at 149. This decision is critical because the Seventh Circuit previously viewed FCC Orders as dispositive at the district court level under the Hobbs Act. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017); *CE Design, Ltd.*

3

*v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010). In *McLaughlin Chiropractic*, the Supreme Court conclusively eliminated this line of authority, holding that district courts are not "bound by the FCC's interpretation of the TCPA." *See* 606 U.S. at 168. Rather, courts are to interpret the TCPA as courts traditionally do. *Id.*

The confluence of *Loper Bright* and *McLaughlin Chiropractic* results in the following: the provision of the TCPA at hand must be interpreted to reach the "best" interpretation, as the statute was written in 1991 (when it was passed), without influence by the modern prevalence of text messaging and unconstrained by the interpretations of the FCC.

## II.    REGULATORY BACKGROUND

Section 227(c) of the TCPA, under which Plaintiff brings his claim, affords a private right of action to "[a] person who has received more than one **telephone call** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Simply put, Section 227(c) does not mention text messages, even though the TCPA itself distinguishes between telephone calls and text messages in other sections. *See* 47 U.S.C. § 227(e).

In 2002, the FCC issued a Notice of Proposed Rulemaking regarding its desire to update the TCPA to account for "[n]ew technologies" that emerged since the TCPA's enactment. *See* Notice of Proposed Rulemaking, 17 FCC Rcd 17459, ¶ 1 (2002) ("2002 NPRM"). Then, in 2003, the FCC proclaimed the term "call" under the TCPA "encompasses both voice calls and text calls." *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003) ("2003 Order"). The FCC identified no statutory basis or authority for concluding that a text message was a "call," and provided no analysis. *See id.* Rather, the FCC apparently believed it could make such a decree because it viewed this determination as consistent with the goals of the statute. *See id.* Critically, it bears noting that the FCC was only interpreting the term "call" as used

4

in 47 U.S.C. § 227(b), and not the term "telephone call" as used in in the entirely separate private right of action found in 47 U.S.C. § 227(c)(5).[2] *See, e.g.*, *Jones*, 2025 WL 2042764, at *4 (noting that the FCC was not interpreting the term "telephone call" under Subsection 227(c)(5)).

Courts simply fell in line with the FCC, under the auspice that they were incapable of disagreeing with FCC edicts. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding that courts "must defer" to the FCC's determination that a text message was a "call"); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (deferring wholesale to the FCC's 2003 Order); *Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 641 n.3 (N.D. Ill. 2019) (finding the court was bound by the FCC's 2003 Order); *Serban v. CarGurus, Inc.*, No. 16 C 2531, 2018 WL 1293226, at *3 n.4 (N.D. Ill. Mar. 12, 2018) (same). Even absent the Hobbs Act, courts still interpreted "call" under Subsection 227(b) with an eye to the *Chevron* analysis and rendered interpretations relative to the reasonableness of the FCC's view. *See Lozano v. Twentieth Century Fox Film*, 702 F. Supp. 2d 999, 1006 (N.D. Ill. 2010)

**II.    PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE 47 U.S.C. § 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES.**

    **A.    The Plain Language of Section 227(c)(5) Requires Dismissal.**

        **1.    *Loper* and *McLaughlin Chiropractic* changed the landscape.**

At the outset, Plaintiff may turn to pre-*Loper Bright* and *McLaughlin Chiropractic* cases (generally involving claims under Section 227(b)) finding text messages covered by the TCPA. This case law should be disregarded, as *Loper Bright* and *McLaughlin Chiropractic* fundamentally change the analysis.

---

[2]    The FCC did not even attempt to expand Subsection 227(c)(5) to encompass text messages until **2023**. *In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 F.C.C. Rcd. 12247, 12256-57 (2023).

5

The pre-*Loper Bright* and *McLaughlin Chiropractic* case law on this issue in this Circuit and elsewhere fall into two buckets. First, the case law in this space largely does not engage in an independent statutory analysis, but relies exclusively on the FCC's views, particularly in light of *Chevron* and the pre-*McLaughlin Chiropractic* view of the Hobbs Act. *See, e.g.*, *Satterfield*, 569 F.3d at 954 (holding courts "must defer" to the FCC's determination that a text message is a "call"); *Murphy*, 797 F.3d at 1305 (deferring wholesale to the FCC's 2003 Order); *also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015) ("We thus unhesitatingly afford deference to the [FCC's] holding that a text message should be treated as a 'call' for purposes of the TCPA," relying on *Chevron*); *Hudson*, 385 F. Supp. 3d at 641 n.4 (finding court was bound by the FCC's 2003 Order). As a result, this issue went effectively unchallenged for years, even before the Supreme Court. *See Duguid*, 592 U.S. at 400 n.2 ("Neither party disputes that the TCPA's prohibition also extends to sending unsolicited text messages. We therefore assume that it does without considering or resolving that issue."); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (noting whether a text message was a call was undisputed).

*Loper Bright* and *McLaughlin Chiropractic* have thus opened the door for courts to reach their own independent reading, as "if no agency were involved." *Loper Bright*, 603 U.S. at 400. Case law deferring wholesale to the FCC, or finding FCC views *binding*, is no longer controlling. The analysis engaged in as explained in detail below in *Jones* and in *Davis* is the precise type of analysis this Court can, and should, undertake. *See Jones*, 2025 WL 2042764, at *4; *Davis*, 2025 WL 2491195, at *1-4.

Second, a few courts in this Circuit endeavored early on to couple the *Chevron* analysis with a more thorough review of the issue at hand. *See, e.g.*, *Lozano*, 702 F. Supp. 2d at 1003; *Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *7 (N.D. Ill. Dec. 14, 2009).

6

Neither of these cases attributed much weight to the FCC's 2003 Order. *See Abbas*, 2009 WL 4884471, at *6. It bears noting, of course, that the FCC's 2003 Order was the impetus for the analysis of these courts; undersigned counsel is aware of no court that determined prior to the FCC's 2003 Order that a text message was a call. This authority nevertheless should be disregarded for two primary reasons. At the outset, both cases interpreted the term "call" as used in Subsection 227(b), and not "telephone call" as used in Subsection 227(c)(5). *See Davis*, 2025 WL 2491195, at *2 (distinguishing a case that "did not address the statutory term 'telephone call' at issue here; it dealt with a broader prohibition on 'any call'" found in 47 U.S.C. § 227(b)). This is critical because as these courts noted, Subsection 227(b) applies "paging services," making this subsection arguably broader than just voice outreach. *See Lozano*, 702 F. Supp. 2d at 1005; *Abbas*, 2009 WL 4884471, at *4. Subsecton 227(c)(5) does not, however, have any similar such issue.

As a more substantive matter, these courts looked beyond the meaning of the term "call" in 1991 to policy rationales to expand the TCPA to text messages. Neither of these courts determined that the term "call" (much less "telephone call") was intended in 1991 to encompass text messages, nor that anyone would reasonably today consider a text message a "call." *See, e.g.*, *Jones*, 2025 WL 2042764, at *4 ("Moreover, in today's American parlance, 'telephone call' means something entirely different from 'text message'."). The *Lozano* court, for example, simply determined that the meaning of "call" in 1991 "does not prohibit application of the statute to text messaging." *Lozano*, 702 F. Supp. 2d at 1008. These courts were, rather, concerned with the overarching intent of the TCPA, and determined that the objectives of the TCPA applied equally to text messages. *See id.* ("[T]ext messages pose the same irritation, interruption and potential costs to consumers as voice calls."); *see also Abbas*, 2009 WL 4884471, at *7 ("[C]ongressional findings and intent apply with equal force to SMS messages.").

These considerations are simply not pertinent. *See Loper Bright*, 603 U.S. at 400 ("[E]very statute's meaning is fixed at the time of enactment.") (internal quotations and citation omitted); *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017) ("[T]he fact that the agency believes its [rule] is good policy does not change the statute's text.").[3] The Supreme Court clearly rejected policy as a reason sufficient to eschew the best reading of a term under the TCPA. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). And finding *the best* reading of the statute is this Court's prerogative. *See Loper Bright*, 603 U.S. at 400 ("[I]f it is not the best, it is not permissible."). A telephone call is not a text message, and a text message is not a telephone call. It remains for *Congress* to amend the TCPA. *See, e.g.*, *Jones*, 2025 WL 2042764, at *5 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology."); *Davis*, 2025 WL 2491195, at *3 ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose.").

  **2.** **A text message is plainly not a "telephone call."**

With the elimination of *Chevron* deference and the hurdle courts previously read into the Hobbs Act, the issue for the Court now is a straightforward matter of statutory interpretation: whether a text message is a "telephone call" under Section 227(c)(5). The answer is an equally straightforward "no."

It is axiomatic that "[w]e should prefer the plain meaning since that approach respects the words of Congress." *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) ("[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."); *McLaughlin Chiropractic*, 606 U.S. at 168 ("The District Court should interpret the statute as courts traditionally do under ordinary principles of

---

[3]  Were it otherwise, again, there would be no basis to distinguish text messages from emails, app-to-app messages or push notifications, which bear clear similarities in modern society.

8

statutory interpretation . . . ."). Where plain language is dispositive, it ends this Court's inquiry. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well.") (internal quotations and citation omitted).

"[T]elephone call" is not defined, and thus courts evaluate the "ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted . . . ." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020). Congress could not have meant for "telephone call" to include "text message," which "did not exist in 1991 when the TCPA was enacted." *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023); *see also Keating*, 615 F. App'x at 370 ("It is clear that Congress did not address, or even intend to address, the treatment of text messages when considering and passing the TCPA. In fact, the first text message was not sent until December 3, 1992, almost a full year after the December 20, 1991, enactment of the TCPA."); *Jones*, 2025 WL 2042764, at *4 ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages.").

Plain language ends the inquiry here, as evidenced by two recent district court decisions. First, in *Davis v. CVS Pharmacy*, a Northern District of Florida court engaged in the following instructive analysis of this exact issue involving a text message claim under 47 U.S.C. § 227(c)(5):

> As CVS cogently explains,
>
> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.
>
> . . . . Certainly, no ordinary person would think of a text message as a "*telephone* call." This conclusion—supported by the ordinary

9

> public meaning at the time of the provision's enactment—is enough to end this case.

*Davis*, 2025 WL 2491195, at *1 (internal citation omitted, emphasis in original). The *Davis* court thus dismissed the case with prejudice. *Id.* at 9.

The Central District of Illinois's recent decision in *Jones v. Blackstone Med. Services, LLC* is also instructive. In *Jones*, the court evaluated whether Section 227(c)(5) applied to text messages. *See* No. 24-cv-01074, 2025 WL 2042764, at *1 (C.D. Ill. July 21, 2025). Following *Loper Bright* and *McLaughlin Chiropractic*, the court engaged in its own statutory analysis. *Id.* at *3-4. The court analyzed and held:

> Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages. . . . Moreover, in today's American parlance, "telephone call" means something entirely different from "text message". Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages.

*Id.* at *4 (internal quotations and citations omitted). The court engaged in an analysis of the FCC's orders, noting the FCC's orders regarding text messaging in fact only discussed Section 227(b), and not Section 227(c). *See id.* at *4-5. While the court afforded respect to the FCC's view, it found the plain language controlled, holding "[i]t is not for a court to legislate by reading into the TCPA something that is not there." *Id.* at *5. Rather it is for Congress to update the TCPA. *Id.*

It is inconceivable that Congress intended "telephone call" to encompass a technology yet to exist, and one bearing no similarity to a telephone call apart from the fact of being received on a handset. Reading "telephone call" to encompass "text message" would similarly render any type of communication—emails, app-to-app messages, push notifications—equally a "telephone call" if it is received on a handset and a notification is received by the user. As the Supreme Court emphasized in *Loper*: "every statute's meaning is fixed at the time of enactment." 603 U.S. at 400 (internal quotation marks omitted). While the use of text messaging has no doubt grown since

1991, the meaning of "telephone call" has not somehow changed. And that is the inquiry—whether "telephone call" as written in 1991 was intended to encompass text messages. It does not.

### B. Principles of Statutory Interpretation Likewise Demonstrate that "Telephone Calls" Do Not Include "Text Messages."

Section 277(c) is clear: private litigants can only bring suits for telephone calls made in violation of the TCPA. In addition to the plain language above, principles of statutory interpretation evidence the clear distinction between a "telephone call" and a "text message."

As a preliminary matter, Congress later amended the TCPA to bring text messages within its scope under a *different provision* regarding caller ID requirements. Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). Congress distinguished between "a call made using a voice service" from a "text message sent using a text message service." 47 U.S.C. § 227(e)(8)(A), (B). This amendment *was not* expanded to cover the provision at issue here. This is critical because "[i]n a given statute, . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Congress did not amend Section 227(c) to include text messages, even though it clearly understood the difference between a telephone call and a text message.

If Congress intended for the term "telephone call" to include text messages in Section 227(c), the delineation between calls and text messages in Section 227(e) would be meaningless; Congress would have just prohibited "calls" using false caller ID information. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

11

Furthermore, Congress's definition of "telephone solicitation" makes clear that Congress did not view "telephone calls" and "messages" to be interchangeable terms. The TCPA defines "telephone solicitation" to "mean[] the initiation of a telephone call *or* message . . . ." 47 U.S.C. § 227(a)(4) (emphasis added).[4] The private right of action under 47 U.S.C. § 227(c)(5) refers only to "telephone call." 47 U.S.C. § 227(c)(5). As the court in *Davis* put it:

> [This] shows that Congress does not use the term "telephone call" to encompass all "messages." Although Davis would have me conclude Congress used the term "telephone call" in § 227(c)(5) and the term "telephone call or message" in § 227(a)(4) to have identical meanings, courts should presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters— that is, the distinct words have different meanings."

*Davis*, 2025 WL 2491195, at *2 (internal quotations and citation omitted).

It further bears noting that the FCC's 2003 expansion of the term "call" in Subsection 227(b)—again, not the term "telephone call," which appears in Subsection 227(c)(5) at issue here—was not rooted in plain language or principles of statutory interpretation. In the 2003 Order, the FCC provides *no* explanation for its view. *See* 2003 Order, 18 F.C.C. Rcd. at 14115. Indeed, the NPRM did not so much as mention text messages. *See* NPRM, 17 F.C.C. Rcd. at 17459; *see also Abbas*, 2009 WL 4884471, at *6 ("The NPRM, while seeking comments on a variety of matters, does not mention SMS messages or any similar term, and does not reference any definition of "call." . . . ."). As best it can be gleaned, the FCC used the 2003 Order to try to account for "[n]ew technologies" that the statute did not address. *See id.* at 17460; *see also* 2003 Order at

---

[4] Lest there be any doubt, the term "message" as used herein does not mean "text message." *See Jones*, 2025 WL 2042764, at *4. Indeed, this definition of "telephone solicitation" was included in 1991 (prior to the advent of text messaging) along with the original text. The term "message," rather, is used throughout the TCPA in the context of prerecorded voice messages. *See, e.g.*, 47 U.S.C. §§ 227(b)(1)(B); 227(d)(3). It is thus clear that Congress was not using the term "message" to refer to a technology yet to exist.

12

Appendix B ¶ 2; *see also* 2023 Order, 38 F.C.C. Rcd. at 12257 (focusing on "the objectives of the TCPA" and declining to conduct any statutory interpretation).[5]

As noted above, policy prerogatives cannot supplant or alter plain language. *See Davis*, 2025 WL 2491195, at *3 ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose. Instead, the best evidence of that purpose is the language of the statute itself."). The Supreme Court recently had occasion to evaluate a similar effort to read the TCPA's terminology to encompass new technologies. In *Facebook, Inc. v. Duguid*, the Supreme Court essentially evaluated whether the term "automatic telephone dialing system" in the TCPA embraced certain modern dialing equipment. *See* 592 U.S. 395. The Court rejected this argument, including the broad policy arguments articulated by the plaintiff. *See id.* at 408 ("That Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."). Most specifically, the Court determined:

> ***Duguid's quarrel is with Congress***, which did not define an autodialer as malleably as he would have liked. "Senescent" as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading of § 227(a)(1)(A). This Court must interpret what Congress wrote . . . .

*Id.* at 409 (emphasis added).

The TCPA is not a free-wheeling statute meant to address all telephonic outreach. *See Loper*, 603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."); *Hulce v. Zipongo Inc.*, 132

---

[5] Plaintiff may argue that courts can "seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright*, 603 U.S. at 394. The Supreme Court was quick to point out, however that *contemporaneous*, consistent interpretations are especially useful. *Id.*; *see also id.* at 386. The FCC's 2003 Order was issued more than a decade after the TCPA, and the FCC's 2023 Order was issued more than 30 years after the TCPA. The undersigned is aware of no *contemporaneous* (much less consistent) interpretation that a "text message" is a "telephone call" under Subsection 227(c)(5).

13

F.4th 493, 500 (7th Cir. 2025) ("Hulce's appeals to the remedial nature of the TCPA or selective quoting of the legislative history do not carry the day."). Even if policy was to be considered, "it is not obvious that limiting the private right of action to address a subset of prohibited conduct would contradict the statute's purpose." *Davis*, 2025 WL 2491195, at *3.

A text message is not a "telephone call" and is simply not actionable under Section 227(c)(5), unless and until Congress amends the statute. And it is the exclusive province of Congress to so amend the TCPA. *See, e.g.*, *Jones*, 2025 WL 2042764, at *5 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025. The Court confines itself to its assigned role which does not include legislating."); *Davis*, 2025 WL 2491195, at *3.

## CONCLUSION

For the foregoing reasons, Shein Distribution Corporation respectfully requests that this Court (i) dismiss Plaintiff's Complaint with prejudice; and (ii) award all other relief it deems equitable and just.

| | |
|---|---|
| Dated: September 2, 2025 | Respectfully submitted,<br><br>/s/ David M. Krueger<br>David M. Krueger<br>dkrueger@beneschlaw.com<br>**BENESCH, FRIEDLANDER,**<br>**COPLAN & ARONOFF LLP**<br>127 Public Square, Suite 4900<br>Cleveland, Ohio 44114<br>Telephone: (440) 313-2974<br>Facsimile: (216) 363-4588<br><br>Mark S. Eisen<br>meisen@beneschlaw.com<br>**BENESCH, FRIEDLANDER,**<br>**COPLAN & ARONOFF LLP**<br>71 S. Wacker Drive, Suite 1600<br>Chicago, Illinois 60606<br>Telephone: (312) 212-4949<br>Facsimile: (312) 767-9192<br><br>*Counsel for Shein Distribution Corporation* |

## **CERTIFICATE OF SERVICE**

I, David M. Krueger, certify that on September 2, 2025, I filed Shein Distribution Corporation's Memorandum in Support of its Motion to Dismiss Pursuant to Rule 12(b)(6) with the Clerk of the Court using its CM/ECF system, which will automatically send electronic notification of this filing to all attorneys of record in this action.

/s/ David M. Krueger

David M. Krueger
