**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| WARREN RICHARDS, *individually and on behalf of all others similarly situated*, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | No. 1:25-cv-01385-TWP-TAB |
| SHEIN DISTRIBUTION CORPORATION, | ) ) | Hon. Tanya Walton Pratt |
| Defendant. | ) ) | Hon. Magistrate Tim A. Baker |
| | ) ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |

**WARREN RICHARDS' OPPOSITION TO DEFENDANT
SHEIN DISTRIBUTION CORP.'S
<u>MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)</u>**

## TABLE OF CONTENTS

Table of authorities ............................................................................................................... ii

Introduction .......................................................................................................................... 1

Background ........................................................................................................................... 4

    I.      Legal background ................................................................................... 4

    II.     Factual background ............................................................................... 6

    III.    Procedural background ......................................................................... 6

Legal standard ...................................................................................................................... 7

Argument .............................................................................................................................. 7

    I.      The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages ............................................................... 8

          A.     The plain meaning of the word "call" includes text messages ................. 8

          B.     That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions ............................. 12

          C.     Shein's arguments for a narrower interpretation are unpersuasive .......... 14

    II.     Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation ............................................. 23

Conclusion .......................................................................................................................... 26

i

## TABLE OF AUTHORITIES

**Cases**

*Abbas v. Selling Source, LLC,*
    2009 WL 4884471 (N.D. Ill. 2009) ................................................................. 9, 22

*Ashland Hospital Corp. v. Service Employees International Union, District 1199 West Virginia/Kentucky/Ohio,*
    708 F.3d 737 (6th Cir. 2013) ............................................................................ 8

*Bosley v. A Bradley Hospitality, LLC,*
    2025 WL 2686984 (S.D. Fla. 2025) ................................................................ 11

*Cacho v. McCarthy & Kelly LLP,*
    739 F. Supp. 3d 195 (S.D.N.Y. 2024) ............................................................ 12

*Campbell-Ewald Co. v. Gomez,*
    577 U.S. 153 (2016) ........................................................................................ 11

*Davis v. CVS Pharmacy, Inc.,*
    2025 WL 2491195 (N.D. Fla. 2025) ........................................................ *passim*

*Dawson v. Porch.com,*
    2024 WL 4765159 (W.D. Wash. 2024) ...................................................... 11, 21

*Diamond v. Chakrabarty,*
    447 U.S. 303 (1980) ................................................................................... 15, 16

*El Sayed v. Naturopathica Holistic Health, Inc.,*
    2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ...................................... 14, 16, 22

*Esquivel v. Mona Lee, Inc.,*
    2025 WL 3275607 (S.D. Cal. 2025) ......................................................... 1, 11, 25

*Facebook, Inc. v. Duguid,*
    592 U.S. 395 (2021) ........................................................................................ 16

*Gager v. Dell Financial Services, LLC,*
    727 F.3d 265 (3d Cir. 2013) ........................................................................... 25

*Harriel v. Bealls, Inc.,*
    2025 WL 2379617 (M.D. Fla. 2025) .............................................................. 12

*Henson v. Santander Consumer USA Inc.,*
    582 U.S. 79 (2017) ...................................................................................... 9, 21

*Hively v. Ivy Tech Community College,*
    853 F.3d 339 (7th Cir. 2017) ..................................................................... 15, 16

*Hudson v. Palm Beach Tan, Inc.*,
2024 WL 4190513 (M.D.N.C. 2024) ........................................................ 9

*Hulce v. Zipongo, Inc.*,
132 F.4th 493 (7th Cir. 2025) ......................................................... *passim*

*Jackson v. Blitt & Gaines, P.C.*,
833 F.3d 860 (7th Cir. 2016) ................................................................. 8

*Jones v. Blackstone Medical Services*,
792 F. Supp. 3d 894 (C.D. Ill. 2025) ............................................. *passim*

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015) ........................................................ 10

*Krakauer v. Dish Network, LLC*,
925 F.3d 643 (4th Cir. 2019) ......................................................... 5, 20

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ...................................................................... *passim*

*Lozano v. Twentieth Century Fox Film Corp.*,
702 F. Supp. 2d 999 (N.D. Ill. 2010) ............................................. *passim*

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ............................................................... 3, 11, 23

*Mujahid v. Newity, LLC*,
2025 WL 3140725 (N.D. Ill. 2025) ................................................ *passim*

*National Cable & Telecommunications Association v. FCC*,
567 F.3d 659 (D.C. Cir. 2009) ............................................................ 16

*New Prime, Inc. v. Oliveira*,
586 U.S. 105 (2019) ..................................................................... 2, 17

*Pepper v. GVG Capital LLC*,
677 F. Supp. 3d 638 (S.D. Tex. 2023) ................................................ 13

*Pfizer, Inc. v. Government of India*,
434 U.S. 308 (1978) .......................................................................... 13

*Pickens v. Hamilton-Ryker IT Solutions, LLC*,
133 F.4th 575 (6th Cir. 2025) ............................................................ 24

*Sagar v. Kelly Automotive Group*,
2021 WL 5567408 (D. Mass. 2021) ...................................................... 8

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ................................................ *passim*

*Schaevitz v. Braman Hyundai, Inc.*,
    437 F. Supp. 3d 1237 (S.D. Fla. 2019) ................................................ 8

*Seven County Infrastructure Coalition v. Eagle County*,
    605 U.S. 168 (2025) ................................................ 25

*Skidmore v. Swift Co.*,
    323 U.S. 134 (1944) ................................................ 25

*South Dakota v. Yankton Sioux Tribe*,
    522 U.S. 329 (1998) ................................................ 22

*Squillacote v. United States*,
    739 F.2d 1208 (7th Cir. 1984) ................................................ 15

*Steidinger v. Blackstone Medical Services*,
    No. 25-2398 (7th Cir. filed Aug. 12, 2025) ................................................ 3, 6

*United States Telecom Association v. FCC*,
    825 F.3d 674 (D.C. Cir. 2016) ................................................ 18, 24

*United States v. Krilich*,
    159 F.3d 1020 (7th Cir. 1998) ................................................ 13

*United States v. Philadelphia National Bank*,
    374 U.S. 321 (1963) ................................................ 22

*Warciak v. Subway Restaurants, Inc.*,
    949 F.3d 354 (7th Cir. 2020) ................................................ 3, 9, 11

*Williamson v. Indiana*,
    2025 WL 2299511 (S.D. Ind. 2025) ................................................ 7

*Wilson v. Medvidi*,
    2025 WL 2856295 (N.D. Cal. 2025) ................................................ *passim*

*Wilson v. Skopos Financial, LLC*,
    2025 WL 2029274 (D. Or. 2025) ................................................ *passim*

*Wisconsin Central Ltd. v. United States*,
    585 U.S. 274 (2018) ................................................ 2, 15

**Statutes**

47 U.S.C. § 227(a) ................................................ *passim*

47 U.S.C. § 227(b) ............................................................................................. *passim*

47 U.S.C. § 227(c) ............................................................................................. *passim*

47 U.S.C. § 227(e) ............................................................................................. 22, 23

Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, 132 Stat. 348 (2018) ............. 22

**Regulations & Administrative Materials**

18 FCC Rcd. 14014 (2003) ................................................................................. *passim*

30 FCC Rcd. 7961 (July 10, 2015) ..................................................................... 5, 10

38 FCC Rcd. 12247 (Dec. 18, 2023) .................................................................. *passim*

88 Fed. Reg. 20800 (Apr. 7, 2023) .................................................................... 5, 10

*Hernandez,*
    2018 WL 6830220 (F.C.C. Dec. 21, 2018) ................................................... 5, 10

**Other Authorities**

*Black's Law Dictionary* (6th ed. 1990) ............................................................. 13

David Crystal,
    *Txtng: The Gr8 Db8* (2008) ......................................................................... 11

Meghan Keane,
    *Texting Overtakes Voice in Mobile Phone Usage*, Wired (Sept. 29, 2008),
    https://www.wired.com/2008/09/texting-overtak ............................................. 11

*Oxford English Dictionary* (2d ed.1989) ........................................................... 8, 13

Paging Network, Inc., Annual Report (1991),
    https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf ............. 9

*Random House Webster's College Dictionary* (1991) ....................................... 8, 12, 13

*Webster's Third New International Dictionary* (2002) ...................................... 8

## INTRODUCTION

A 1991 law that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The Telephone Consumer Protection Act prohibits sending text messages to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls.

Of course, text messaging didn't exist yet when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both the FCC and courts have long recognized, the plain meaning of the word "call" in the TCPA encompasses any attempt to communicate by phone, "regardless of whether that call is communicated by voice or text." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607, at *2–3 (S.D. Cal. 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2–3 (N.D. Ill. 2025); *Wilson v. Medvidi*, 2025 WL 2856295, at *2–4 (N.D. Cal. 2025); *Wilson v. Skopos Fin.*, *LLC*, 2025 WL 2029274, at *4–5 (D. Or. 2025).

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010) (St. Eve, J.). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not

Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

Defendant Shein Distribution Corporation's motion to dismiss argues otherwise, mainly by insisting that no one would describe a text message as a "telephone call" in "modern parlance." ECF 17 at 1. That same intuition animates the handful of recent district court decisions that have adopted Shein's reading. *See infra*, Part I.C.1.b & n.11. But that's not how statutory interpretation works. Courts look to a statute's ordinary "meaning at the time of … adoption" to interpret the law, not "modern intuitions." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). In fact, modern conversational parlance can be downright misleading when times have changed. *See id.* at 114–16. It also doesn't matter that text messages didn't exist yet when the TCPA became law. Although "every statute's *meaning* is fixed at the time of enactment," there is nothing odd about old text finding "new *applications*" as times change. *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018).

Shein's reading has other problems, too. It hinges (at 5–11) on a single use of the word "call" in section 227(c)(5), which creates a private right of action to enforce the FCC's Do Not Call List rules. Yet the company cannot explain why the reference in the private-action provision should be construed more narrowly than the Do Not Call List rules that it exists to enforce. It also cannot explain why the word "call" would have a different meaning there than it has in the TCPA's nearby autodialer provisions. The meaning of "call" is even clearer in that part of the statute, where Congress used "call" to describe written messages received on a pager—the most analogous technology to text messaging that existed in 1991. *See* 47 U.S.C. § 227(b)(1)(A)(iii). If a text "call"

to a pager can violate the TCPA, a text "call" to a cell phone can too. *See Lozano*, 702 F. Supp. 2d at 1004–05.

For all these reasons, Shein's position is unpersuasive. It's also unlikely to prevail if and when the court of appeals decides this issue. *See Steidinger v. Blackstone Med. Servs.*, No. 25-2398 (7th Cir. filed Aug. 12, 2025). The Seventh Circuit has never before hesitated to recognize that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020). And it has continued to treat texts as actionable even after *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)—the case that Shein says should be causing a sea change now. *See Hulce v. Zipongo, Inc.*, 132 F.4th 493, 496–97 (7th Cir. 2025). So it makes sense to resolve this motion to dismiss without waiting on *Blackstone*, as Magistrate Judge Baker recognized when he denied Shein's request to put this motion on hold until *Blackstone* is decided. *See* ECF 32.

Once Shein's flawed interpretation of the statute is set straight, the analysis here is straightforward: Plaintiff Warren Richards received multiple unwanted marketing texts from Shein within the span of less than a month, and those texts indisputably violated the FCC's Do Not Call List rules. *See* 47 C.F.R. § 64.1200(c)(2), (e). Mr. Richards therefore "received more than one telephone call within any 12-month period … in violation of the regulations," and may sue to enforce his "privacy rights to avoid receiving telephone solicitations" that he does not want. 47 U.S.C. § 227(c)(1), (5).

This Court should deny the motion to dismiss.

## BACKGROUND

### I.    Legal background

**1.** Section 227(c) of the Telephone Consumer Protection Act empowers the FCC to decide whether to create a national Do Not Call List, and to determine the rules that will govern it. *See* 47 U.S.C. § 227(c)(1)–(4).

The guiding purpose of a Do Not Call List is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). The key operative term there is "telephone solicitations," which are defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." *Id.* § 227(a)(4). As one court recently observed, that definition is "more concerned with the purpose of the telephone communications [that are prohibited] than the form in which those communications are transmitted." *Wilson v. Medvidi, Inc.*, 2025 WL 2856295, at *3 (N.D. Cal. 2025)*; see, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493, 497–500 (7th Cir. 2025) (Do Not Call List liability turned on whether a text message had the requisite commercial purpose).[1]

The statute grants the FCC broad discretion to determine the rules governing the Do Not Call List. The statute expressly empowers the FCC to make rules "that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). And it directs the FCC to evaluate alternative approaches based on open-ended criteria such as their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." *Id.* § 227(c)(1)(A).

---

[1] Unless otherwise specified, all internal quotation marks, alterations, and citations are omitted from quotations throughout.

Any Do Not Call List regulations that the FCC establishes must meet certain statutory criteria. *See id.* § 227(c)(3)–(4). For example, the rules must require phone companies to notify their subscribers about the Do Not Call List, and must specify how frequently the list will be updated. *Id.* § 227(c)(3)(B), (c)(3)(I). And—as relevant here—the statute specifies that the FCC's rules must "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber" on the national Do Not Call List. *Id.* § 227(c)(3)(F).

Finally, section 227(c)(5) provides for private enforcement of the FCC's Do Not Call List rules. That provision grants an express private right of action in federal court to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under the Do Not Call List rules. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019).

**2.** The FCC's implementing regulations for the Do Not Call List include 47 C.F.R. § 64.1200(c)(2), which generally prohibits "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number" on the Do Not Call List. The FCC has also determined in a series of orders and, more recently, in a formal regulation that this rule applies to "calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e); *see* 18 FCC Rcd 14014, 14115 ¶ 165 (July 3, 2003); 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (July 10, 2015); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (F.C.C. Dec. 21, 2018); 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr. 7, 2023); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (Dec. 18, 2023).[2]

---

[2] The FCC's interpretation of the word "call" was first discussed in the context of the TCPA's nearby prohibitions on autodialed calls, found in section 227(b). *See* 18 FCC Rcd at 14115 ¶ 165.. But the FCC has since clarified that it applies to section 227(c), too. *See* 38 FCC Rcd. at 12256–57 ¶ 26.

## II.    Factual background

Mr. Richards has a personal cell phone that he uses to communicate with friends and family and for other household tasks like scheduling appointments. Compl. (ECF 1) ¶¶ 8–14. He registered its phone number on the nationwide Do Not Call List. *Id.* ¶ 15.

Despite having no existing relationship with Mr. Richards, and without his consent, Shein intentionally sent Mr. Richards multiple telemarketing text messages in the space of less than a month. *Id.* ¶¶ 16–22. For purposes of this motion, it is undisputed that those text messages all were sent in violation of the FCC's Do Not Call List rules. *See* 47 C.F.R. § 64.1200(c)(2), (e).

## III.    Procedural background

Mr. Richards brought this suit against Shein to enforce his rights under the TCPA and its implementing regulations, as well as the rights of others who also received unauthorized marketing messages from the company while on the Do Not Call List. Compl. ¶¶ 25, 31–35, 53–61.

Shein moved to dismiss. ECF 16. It contends that the FCC's rules prohibiting unsolicited text messages to numbers on the Do Not Call List cannot be enforced through the private right of action in section 227(c)(5), *see* ECF 17 at 8–11, and may also violate the substantive provisions of the statute (although Shein's brief is equivocal on that second point), *see id.* at 12 & n.4. Either way, the crux of Shein's motion is a contention that section 227(c) of the TCPA—and in particular a single use of the word "call" in section 227(c)(5)—authorizes Do Not Call List protection only against telemarketing voice calls, not against telemarketing texts.

Shein then moved to stay the entire case—including resolution of this motion—pending resolution of *Steidinger v. Blackstone Medical Services*, a recently filed Seventh Circuit appeal that raises the same legal issue. No. 25-2398 (7th Cir. filed Aug. 12, 2025)*; see* ECF 19 at 3–7. In the alternative, Shein made a fallback request for a "brief stay of discovery pending Shein's Motion

to Dismiss." ECF 19 at 8–9. Magistrate Judge Baker granted only the more limited request, staying other matters "pending a ruling on Defendant's motion to dismiss." ECF 32 at 2.[3]

## LEGAL STANDARD

On a Rule 12(b)(6) motion, a court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff to determine whether the complaint states a facially plausible claim for relief. *See, e.g.*, *Williamson v. Indiana*, 2025 WL 2299511, at *5 (S.D. Ind. 2025) (Pratt, J.).

## ARGUMENT

Shein contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: The word "call" as used in the TCPA refers to any attempt to communicate by telephone, so the FCC may prohibit telemarketing texts to numbers on the Do Not Call List. The context and purpose of the TCPA's Do Not Call List provisions reinforce that interpretation. And Shein's arguments for its restrictive interpretation all fail—the company goes about interpreting the word "call" in section 227(c)(5) all wrong, and ends up assigning it a meaning that is at odds with the rest of the statute in multiple ways.

Moreover, because section 227(c) is structured as an express delegation of discretionary authority to the FCC, any doubt about the answer here simply means that Congress intended the agency's reasonable judgment to control.

---

[3] Magistrate Judge Baker adopted the "sound analysis" of a recent order in another case that also denied a stay pending resolution of the *Blackstone* appeal. ECF 32 at 1. That order allowed resolution of a similar motion to dismiss to proceed without awaiting a decision in *Blackstone* because "the Seventh Circuit could take years" to decide the issue. Order at 8, *Richards v. Fashion Nova, LLC*, No. 1:25-cv-1145-TWP-MKK (S.D. Ind. Oct. 27, 2025), ECF 35.

I.    **The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.**

A.    **The plain meaning of the word "call" includes text messages**

**1.** To interpret a statutory term, courts "look to the meaning of the word at the time the statute was enacted, often by referring to dictionaries." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016). Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir 2009) (quoting *Webster's Third New International Dictionary* (2002)); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1007 (N.D. Ill. 2010) (St. Eve, J.) (same). This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone").

Courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Sagar v. Kelly Auto. Grp.*, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). And texting is, of course, a means of communicating with someone by telephone. So the established definition of "telephone call" readily encompasses texts. *See, e.g.*, *Satterfield*, 569 F.3d at 953–54; *Lozano*, 702 F. Supp. 2d at 1007; *Wilson v. Medvidi*, 2025 WL

2856295, at *2 (N.D. Cal. 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2 (N.D. Ill. 2025) .

The established meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). The word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the statute when it was first enacted in 1991. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[4] So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, 2009 WL 4884471, at *4 (N.D. Ill. 2009).

The Seventh Circuit has therefore said, in a case alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciakv. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020). And other courts, too, have "routinely found that the phrase 'call' in subsection (b) … includes text messages." *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *7 n.6 (M.D.N.C. 2024); *see, e.g., Satterfield*, 569 F.3d at 952–54; *Lozano*, 702 F. Supp. 2d at 1003–09. That consensus meaning of the word

---

[4] *See, e.g.*, Paging Network, Inc., Annual Report 8 (1991), https://digital.library.mcgill.ca/ images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

"call" in section 227(b) "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

The FCC has long endorsed that interpretation of the word "call." The agency determined as early as 2003 that when the TCPA says "call," it must mean not just traditional voice calls but also modern text messages. 18 FCC Rcd 14014, 14115 ¶ 165 (Jul. 3, 2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers." *Id.* The FCC has consistently adhered to that position ever since. *See* 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (2015); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (F.C.C. Dec. 21, 2018)*;* 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr. 7, 2023); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (Dec. 18, 2023).

To be sure, the FCC first interpreted the word "call" to include text messages in the context of the TCPA's prohibitions on autodialed calls in section 227(b). But that is unsurprising, because the word "call" is used more extensively in that part of the statute, whereas section 227(c) mainly uses the defined term "telephone solicitation." *See Medvidi*, 2025 WL 2856295, at *3. And the FCC has since confirmed in a formal regulation that its 2003 interpretation of the word "call" also applies to text messages in the Do Not Call List context, specifically. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. at 12256–57 ¶ 26.

If anything, even though it is only briefly discussed in the relevant order, the FCC's 2003 interpretation of the word "call" to include texts is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. at 14115 ¶ 165. When Congress originally drafted the TCPA, text messages didn't exist. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Medvidi*, 2025 WL 2856295, at *2. And texting didn't achieve widespread

10

popularity until the 2000s.[5] So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our 2025 intuitions, which reflect a world where texting has been ubiquitous for decades. *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.").

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' …."); *Warciak*, 949 F.3d at 356 ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."). And that has remained true even after the *McLaughlin* and *Loper Bright* decisions that Shein says (at 3) should be causing a sea change. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493, 496–97 (7th Cir. 2025) (taking as a given that texts can be actionable "telephone solicitations" under section 227(c)).[6]

The FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3.

---

[5] *See, e.g.*, David Crystal, *Txtng: The Gr8 Db8* 4 (2008) ("The average number of texts per GSM customer in 1995 was 0.4 per month; by the end of 2000 it was still only 35."); Meghan Keane, *Texting Overtakes Voice in Mobile Phone Usage*, Wired (Sept. 29, 2008), https://www.wired.com/2008/09/texting-overtak (noting that the number of text messages surpassed the number of voice calls for the first time in 2007).

[6] *See also, e.g.*, *Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607, at *2–3 (S.D. Cal. 2025); *Bosley v. A Bradley Hosp., LLC*, 2025 WL 2686984, at *5 (S.D. Fla. 2025); *Dawson v. Porch.com*, 2024 WL 4765159, at *5 & n.4 (W.D. Wash. 2024) (agreeing that a text is a call "whether deference to the agency's interpretation is appropriate or not").

**B.    That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.**

Shein's argument focuses mainly on the single use of the word "call" in section 227(c)(5). *See* ECF 17 at 5–11. But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes, with certain exceptions not relevant here. 47 U.S.C. § 227(a)(4) (emphasis added). A text message, no less than a voice call, can be "transmitted." *See, e.g.*, *Transmit*, *Random House Webster's College Dictionary* (1991) ("to send a signal by radio waves or by wire"). And the reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages.

*Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent.*" *Message*, *Black's Law Dictionary* (6th ed. 1990) (emphasis added).[7] So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums.

More generally, the definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of commercial transactions. 47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce*, 132 F.4th at 497–500 (Do Not Call List liability turned on whether a text message had the requisite commercial purpose). At the same time, the statute uses broad and inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication mediums, including text messages. *See Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (rejecting an argument that "text messages are not actionable" under section 227(c) because it "fails in the face of the statutory text, which refers to 'telephone call[s] or message[s]'").[8] The statutory definition of "telephone solicitation" therefore "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form

---

[7] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or* written communication sent from one person to another") (emphasis added).

[8] *See also, e.g.*, *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978) ("any person" has a "naturally broad and inclusive meaning"); *United States v. Krilich*, 159 F.3d 1020, 1028 (7th Cir. 1998) (statute that used "any" multiple times was "straightforward and broad").

in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2 (same).

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025). Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

### C.    Shein's arguments for a narrower interpretation are unpersuasive.

Shein would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the word "call" in section 227 (c)(5) can only mean "voice call," and therefore the statute categorically excludes text messages. Its arguments mainly rely on two recent district court cases, *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025)—the decision that is currently on appeal before the Seventh Circuit—and *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025). But none of the arguments made by Shein or in those cases are persuasive.[9]

---

[9] Since the motion to dismiss was filed, one more district court decision has come out Shein's way. *See El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025). *El Sayed*'s one paragraph of analysis agrees with *Davis* that the meaning of the word is "clear," then cites the same 2018 legislation that Shein does to argue that section 227(c) can't cover text messages because it doesn't specifically refer to them. *See id.* Both of those rationales are wrong, for the reasons explained below. *See infra*, Part I.C.1.b, 2.c.

**1.** Consider first how Shein reads the word "call" in section 227(c)(5). It repeats a few basic arguments for reading that word as implicitly limited to voice calls. But all of them go about interpreting the statute wrong.

**a.** First, Shein (parroting *Jones*) insists that "call" cannot encompass text messages because "text messaging was not an available technology in 1991." ECF 17 at 1, 9 (quoting *Jones*, 792 F. Supp. 3d at 899).

That's not how statutory interpretation works. It's true that text messaging did not exist in 1991, so Congress didn't have texting specifically in mind. *See Medvidi*, 2025 WL 2856295, at *2. But it is black-letter law that statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980) (collecting cases); *see also, e.g.*, *Hively v. Ivy Tech Cmty. Coll.*, 853 F.3d 339, 344–45 (7th Cir. 2017) (en banc). Instead, "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 2d at 1008 (citing *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984)).

There's nothing unusual about that. "While every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). That's why, for example, "a 1925 statute dealing with 'news media' … appl[ies] to television." *Squillacote*, 739 F.2d at 1213. Or why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See id.* (similar example with Volkswagens).

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL

2856295, at *2. The 1991 meaning of the word "call"—which "refers to both oral and written communications"—is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007. And that remains true even if text messages were not the "particular manifestation of [the] problem" that Congress had front of mind when it was legislating. *Nat'l Cable & Telecomms. Ass'n v. FCC*, 567 F.3d 659, 665 (D.C. Cir. 2009); *see Diamond*, 447 U.S. at 315; *Hively*, 853 F.3d at 344–45.[10]

Simply put, this is not a case where the Court needs to "supplant or alter plain language" in order to "encompass new technologies." *Contra* ECF 17 at 13. The plain meaning of the statute Congress used in 1991 already covers modern text messages. *See supra*, Part I.A–B.

**b.** Next, Shein says that in "modern parlance" it sounds odd to refer to a text message as a telephone call. ECF 17 at 1. *Jones* and *Davis* also rely on that same intuition—both courts found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis*, 2025 WL 2491195, at *1.[11]

No doubt most people wouldn't use the word "call" the way the TCPA does in casual

---

[10] Shein likens this case to *Facebook, Inc. v. Duguid*, where the Supreme Court declined to read the TCPA's technical definition of prohibited "autodialer" technology more broadly than its text would bear. *See* 592 U.S. 395 (2021). But contrasting that case with this one actually underscores why Shein's arguments don't work. The autodialer definition at issue in *Duguid* was: "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at 402 (quoting 47 U.S.C. § 227(a)(1)). That is a precise and technical definition, reflecting Congress's narrow focus on a specific "number generator technology" that "caused unique problems." *Id.* at 408. Thus, "Duguid's quarrel [was] with Congress, which did not define an autodialer as malleably as he would have liked." *Id.* at 409. But here the meaning of the word "call" and its context suggest the opposite: Congress *did* use language that was broad enough to evolve with the times, so the statutory text *does* encompass modern text messages.

[11] *See Davis*, 2025 WL 2491195, at *1 ("No normal person refers to a text message, or thinks of a text message, as a 'call.'"); *Jones*, 792 F. Supp. 3d at 899–900 ("[I]n today's American parlance, 'telephone call' means something entirely different from 'text message.' Thus, under a plain reading, section 227(c)(5) of the TCPA does not regulate text messages."); *see also El Sayed*, 2025 WL 2997759, at *2 (agreeing with *Davis* that "in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication").

conversation, especially nowadays. In 2025, text messages are ubiquitous, and society has developed a whole vocabulary around them—think "emoji," "group chat," "read receipt," and so forth. As part of that texting-specific lexicon, we are now very accustomed to saying "text message" or just "text" to describe written messaging between phones.

But statutory interpretation does not turn on modern colloquial usage. To the contrary, when language has evolved since a statute's enactment, current usage can be misleading. For example, in *New Prime, Inc. v. Oliveira*, the Supreme Court explained that the statutory term "contracts of employment" in the Federal Arbitration Act nowadays "might call to mind only agreements between employers and employees," and thus exclude independent contractors. 586 U.S. 105, 114 (2019). But that "modern intuition" did not match the "evidence of the term's meaning at the time of the Act's adoption," which revealed that "'contract of employment' usually meant nothing more than an agreement to perform work." *Id*. The Supreme Court therefore held that the statutory exception at issue reached not just conventional "employees," as modern parlance might suggest, but also modern independent contractors, as definitions from the time of the statute's enactment showed. *See id.* at 114–16. *New Prime* illustrates that when there's a mismatch between contemporary intuitions and the original meaning at the time of enactment, the latter is what controls—not (as Shein's cases put it) how an "ordinary person would think of a text message" today, *Davis*, 2025 WL 2491195, at *1, or "today's American parlance," *Jones*, 792 F. Supp. 3d at 899–900.

**c.** Third, Shein argues (at 8 n.3, 10) that reading "call" to include text messages risks subjecting other smartphone capabilities—such as "e-mails," "app-to-app messages," and "push notifications"—to Do Not Call List regulation. But that argument just confirms that Shein's interpretation of "call" ignores its context. A Do Not Call List violation occurs only when a

17

prohibited "telephone solicitation" is directed to a listed "telephone number." 47 U.S.C. § 227(c)(3)(F). An e-mail address is not a "telephone number," so merely receiving e-mail on a phone doesn't make it a TCPA violation. The same goes for most push notifications. And to the extent there is any question about how the Do Not Call List rules might apply to, say, certain modern messaging apps—that sort of question is precisely why Congress left the specifics of any Do Not Call List rules up to the expert judgment of the FCC. *See* 47 U.S.C. § 227(c)(1)(A)–(E); *cf. U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (an express delegation was evidence that Congress expected telecommunications technology "to evolve and therefore charged the [FCC] with the continuing obligation to define it"). There's no technological slippery slope here. But even if there were, Congress gave the FCC responsibility for policing it.

**2.** Shein's interpretation fares no better when it comes to the broader statutory context in which the word "call" in section 227(c)(5) appears.

**a.** Shein barely engages with the substantive Do Not Call List provisions of the statute in the remainder of section 227(c). When it does, it seems to take the position (at 12 n.4) that text messages don't meet the statutory definition of a "telephone solicitation" because (according to Shein) not only are text messages not calls, they aren't *messages* either. That's as wrong as it sounds. As noted above, the word "message" covers texts even more clearly than the word "call," because contemporary definitions of "message" encompassed both oral *and written* communication. *See supra*, Part I.B. Ultimately, Shein's reading of the "telephone solicitation" definition just doubles down on its erroneous view that Congress could not have drafted the statute to cover "a technology yet to exist." ECF 17 at 12 n.4. And that way of interpreting a statute is

wrong, for the reasons already explained. *See supra*, Part I.C.1.a.[12]

Perhaps because "text messages aren't messages" isn't a promising avenue, Shein also attacks the broad definition of "telephone solicitation" a different way. Citing *Davis*, the company contends that by inclusively defining a "telephone solicitation" as "the initiation of a telephone call or message" in section 227(a)(4), and then later referring only to a "telephone call" in section 227(c)(5), Congress intended to give section 227(c)(5)'s private right of action a narrower scope than the substantive provisions of section 227(c). *See* ECF 17 at 12 (citing *Davis*, 2025 WL 2491195, at *2). On this theory, the FCC presumably *can* prohibit telemarketing texts to numbers on the Do Not Call List, but private litigants may enforce those rights only when a voice call is involved.

That reading of the statute doesn't work either. Neither Shein nor *Davis* identifies any reason Congress would have intended that odd result. And the text of section 227(c)(5) suggests otherwise—first, by being much more explicit about different ways that the private right of action actually is limited (requiring "more than one" call "within any 12-month period"); and, second, by linking the private right of action to "violation of the regulations prescribed under this subsection" (not any particular subset thereof). The reference to "violation of the regulations," in particular, suggests that section 227(c)(5) is simply "a straightforward provision designed to achieve a straightforward result"—making violations of the FCC's rules actionable. *See Krakauer*, 925 F.3d at 650.

---

[12] Shein's theory appears to be that "call or message" might have been intended to convey that a "telephone solicitation" can involve either a realtime conversation or a "prerecorded voice message[]." ECF 17 at 12 n.4. But even if that were what Congress had in mind *at the time*, that would not preclude the language from applying to text messages *going forward*. *See, e.g.*, *Lozano*, 702 F. Supp. 2d at 1005 (endorsing a voice-message-focused characterization of section 227(a)(4) while still agreeing that a text is a "call" as that term is used in the TCPA).

Moreover, if Congress wanted to limit *only* the private right of action in section 227(c)(5) to voice communications, implicitly doing so by using the word "call" would have been a strange way to go about it. After all, the word "call" *does* include textual communication in other provisions of the statute. *See supra*, Part I.A. If Congress intended to cabin section 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have done so by using a term that elsewhere *includes* them.

Because it's doubtful that Congress intended section 227(c)(5) to have a narrower scope than the Do Not Call List regulations it exists to enforce, the much better reading of "call or message" in section 227(a)(4) is that it instead signals Congress's intent to inclusively define the kinds of "telephone solicitations" that can be prohibited. *See supra*, Part I.B. It simply "makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3.

**b.** Shein also has no good answer for nearby uses of the word "call" in section 227(b), the autodialer provisions of the original TCPA.

Shein and its cases do not dispute that "call" covers text messages in the autodialer provisions. Nor could they: The meaning of "call" is especially clear in section 227(b) because it's used there to describe a (typically text-focused) transmission to a "paging service." *See supra*, Part I.A. In response, all they can say is that section 227(b) is a "different provision" and could in theory be "arguably broader" than section 227(c). ECF 17 at 2, 7; *see Jones*, 792 F. Supp. 3d at 900–01; *Davis*, 2025 WL 2491195, at *2.

What's missing, however, is any credible reason to think that "call" *actually does* mean something broader in section 227(b) than in section 227(c). Absent good reason to think otherwise,

a statutory term is presumed to have a consistent meaning throughout a statute. *See Henson*, 582 U.S. at 85. Shein doesn't say why the meaning of "call" would differ between the two provisions. Nor does *Jones*. The only possible distinction comes from *Davis*, which notes that section 227(b) says it's unlawful to make "any call" to various kinds of devices using an autodialer, whereas section 227(c) refers to a prohibited "telephone call." *See* 2025 WL 2491195, at *2. But it's not clear why the modifier "telephone" would affect anything. Shein hasn't disputed that a text is a "telephone" communication; of course it is. And "any" is hardly unique to section 227(b). Section 227(c) uses similarly expansive modifiers, requiring the FCC to "prohibit *any* person from making *or transmitting* a telephone solicitation to the telephone number of *any* subscriber included" in the Do Not Call List. 47 U.S.C. § 227(c)(3)(F) (emphases added); *see supra*, Part I.B. So all *Davis* has identified is a distinction without any meaningful difference.

Moreover, reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. As the FCC recently explained, it would be "anomalous" to give the word "call" a narrower meaning in section 227(c)(5) than it has elsewhere in the TCPA. 38 FCC Rcd. at 12257 ¶ 27. And, again, Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. *See supra*, Part I.C.2.a. So "there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson*, 2024 WL 4765159, at *5; *see Mujahid*, 2025 WL 3140725, at *2.

**c.** Finally, Shein says (at 11) that an entirely separate provision, added to the statute in 2018, distinguishes between calls and text messages. Namely, Shein cites definitions of "caller identification" found in the Consolidated Appropriations Act of 2018. Pub. L. No. 115-141, div. P, § 503(a), 132 Stat. 348, 1092–93 (2018); *see* 47 U.S.C. § 227(e)(8)(A)–(B). Those provisions prohibit false or misleading "caller identification information," defined as information about the

source of "a call made using a voice service or a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A). Shein says that shows that a "call" and a "text message" are distinct.[13]

But, if anything, section 227(e)(8) actually shows the opposite: It reinforces that texts *are* calls in the lexicon of the TCPA. It describes a "text message" as something that comes from a "caller," just like a traditional voice call does. So the more natural takeaway is that section 227(e)(8) identifies two different types of calls—voice calls and text messages—both of which originate with a "caller" and therefore require "caller identification." Unlike Shein's interpretation, that reading of section 227(e)(8) accords with the meaning of "call" as that word is used elsewhere in the TCPA. *See supra*, Parts I.A–B.

And even if section 227(e) did distinguish between a "text message" and a "call," as Shein contends, that wouldn't change the best reading of section 227(c). When Congress enacted section 227(e) in 2018, Congress directed that nothing therein "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]." Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, div. P, § 503(d), 105 Stat. 348, 1094. That would include the FCC rules and orders that interpreted "call" to include text messages.

Finally, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998) (quoting *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 348–49 (1963)); *see also Abbas*, 2009 WL 4884471, at *5 ("Subsequent legislation provides at best an uncertain indicator of previous congressional intent …."). Surely that's especially true here, where the Congress that enacted the original TCPA in 1991 and the Congress that enacted section 227(e)(8) in 2018 legislated on opposite ends of a seismic shift in phone technology. The more meaningful reference point is the meaning of "call"

---

[13] *El Sayed* also relies on the 2018 legislation. *See* 2025 WL 2997759, at *2.

in section 227(b), which was enacted at the same time as section 227(c), and which clearly uses "call" to refer to written messages. *See supra*, Part I.A.

## II.    Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation.

The best reading of the statute is that the word "call" includes texts. But if there's any doubt about that, the FCC's interpretation should resolve it. That's because Congress expressly delegated authority to the FCC to "fill up the details" of the Do Not Call List rules. *Loper Bright*, 603 U.S. at 395. As at least one other court has held post-*Loper Bright*, section 227(c) "explicitly delegates such authority." *Skopos*, 2025 WL 2029274, at *4. So the FCC's longstanding reasonable interpretation of the word "call" should still carry the day. *See id*.

**1.** To be sure, mere statutory ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). And district courts are not bound by the Hobbs Act to adopt FCC interpretations; they can and should make their own assessment of the statute. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). Shein says this means no "deference [is] owed," so courts can now ignore the FCC's longstanding interpretation and act "as 'if no agency were involved.'" ECF 17 at 2, 6 (quoting *Loper Bright*, 603 U.S. at 400). But that's incorrect.

Sometimes "the best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id*. at 394–95. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and

ensure "reasoned decisionmaking" within them. *Id.* at 395; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. Congress didn't write the Do Not Call List rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility" to best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395; *see Hulce*, 132 F.4th at 497 n.1 (noting the FCC's "delegated authority" to make Do Not Call List rules). In the telecommunications context, especially, an express delegation like this one is evidence that Congress expected technology "to evolve and therefore charged the [FCC] with the continuing obligation to define it." *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016). It follows that, if the statute doesn't resolve this question, Congress expected that the FCC would.

**2.** It therefore would honor Congress's intent to "respect [that] delegation" and accept the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395, 413.

Exercising its expressly delegated authority, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier" and "eliminate[s] any potential confusion in the industry." 38 FCC Rcd. at 12256–57 ¶¶ 26–27 & n.59. That conclusion aligns with the FCC's determination that cell phone numbers may be listed, and that the word "call" confers protection from unwanted text messages in other TCPA contexts. *Id.* ¶ 27. Moreover, the FCC has consistently adhered to that understanding of the word "call" for

more than two decades, dating back to the earliest years of the technology, when text messaging first became common. *See* 18 FCC Rcd. at 14115 ¶ 165 (July 3, 2025); 30 FCC Rcd. at 8020 ¶¶ 115–16 (July 10, 2015); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (Dec. 21, 2018). That conclusion is "reasonable and reasonably explained," and therefore warrants deference. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025).

Indeed, as Shein acknowledges (at 5), back when *Chevron* applied courts often deferred to the FCC's judgment about the meaning of "call" in the TCPA. *See, e.g.*, *Satterfield*, 569 F.3d at 954 (granting the FCC *Chevron* "deference to hold that a text message is a 'call' within the TCPA"); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013) (following *Satterfield*). After *Loper Bright*, there are many cases where agencies' reasonable decisions are no longer entitled to deference, but this is not one of them. The FCC's judgment about the status of text messages under its rules is as worthy of deference now as it was then. *Skopos Fin.*, 2025 WL 2029274, at *4.

**3.** Alternatively, the FCC's interpretation should—at the very least—be accorded "great weight." *Loper Bright*, 603 U.S. at 388. The FCC's position is grounded in the agency's expertise, consistent across decades, and well-reasoned. Those are the hallmarks of agency action with the "power to persuade." *Id.*; *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944). The FCC's longstanding and consistent interpretation of the word "call" is thus an "informed judgment" to which this Court can "properly resort for guidance." *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 139–40); *see Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607, at *3 (S.D. Cal. 2025); *Medvidi*, 2025 WL 2856295, at *3 (accepting the FCC's interpretation as evidence of "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage").

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to dismiss.

Dated: December 1, 2025                          Respectfully submitted,

                                                */s/ Michael Skocpol*
                                                Matthew W.H. Wessler[*]
                                                Michael Skocpol[*]
                                                **GUPTA WESSLER LLP**
                                                2001 K Street, NW
                                                Suite 850 North
                                                Washington, DC 20006
                                                (202) 888-1741
                                                *michael@guptawessler.com*

                                                Anthony Paronich (SBN 088733)
                                                **PARONICH LAW, P.C.**
                                                350 Lincoln Street, Suite 2400
                                                Hingham, MA 02043
                                                (617) 485-0018
                                                *anthony@paronichlaw.com*

                                                *Counsel for Plaintiff*

---

[*]admitted pro hac vice

**CERTIFICATE OF SERVICE**

I, Michael Skocpol, certify that on December 1, 2025, I filed Warren Richards' Opposition to Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) with the Clerk of the Court using its CM/ECF system, which will automatically send electronic notification of this filing to all attorneys of record in this action.

/s/ Michael Skocpol
Michael Skocpol