# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| WARREN RICHARDS, *on behalf of himself and all others similarly situated,* )<br>)<br>) | |
| Plaintiff, ) | No: 1:25-cv-01385-TWP-TAB |
| ) | |
| v. ) | Hon. Tanya Walton Pratt |
| ) | |
| SHEIN DISTRIBUTION CORPORATION, ) | Hon. Magistrate Tim A. Baker |
| ) | |
| Defendant. ) | **ORAL ARGUMENT REQUESTED** |
| ) | |

# REPLY IN SUPPORT OF
# <u>SHEIN'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)</u>

## PRELIMINARY STATEMENT

The issue at hand is the scope of the term "telephone call" as used in 47 U.S.C. § 227(c)(5). This is not an esoteric term of art, *sui generis* to the TCPA. It was a commonly understood term in 1991 when the TCPA was passed, and remains so today. A text message was not a telephone call *then or now*. As one court remarked, "[c]ertainly, no ordinary person would think of a text message as a '*telephone* call'," nor did anyone at the time. *Davis v. CVS Pharmacy, Inc*., -- F. Supp. 3d --, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) (emphasis in original). The Supreme Court teaches that only Congress can "revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). Plaintiff's opposition, seeking to effectively amend the TCPA, fails to persuade otherwise.

<u>First</u>, Plaintiff commits the threshold error of effectively *ignoring* the Supreme Court's rulings in *Loper Bright* and in *McLaughlin Chiropractic*. These rulings reshaped this Court's interpretive goal. No longer is this Court evaluating the *reasonableness* of an FCC interpretation; its sole lodestar is to identify **the best** interpretation of the statutory term at issue, irrespective of the modern shift in communications or policy goals. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). As a result, Plaintiff fundamentally misapprehends the recent wave of cases holding a text message is not a telephone call. *See Davis*, 2025 WL 2491195, at *1; *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025); *Sayed v. Naturopathica Holistic Health*. 25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025).

<u>Second</u>, Plaintiff's heavy reliance on pre-*Loper Bright* and *McLaughlin Chiropractic* decisions is misplaced. Those cases *assumed*—but did not analyze, because the issue was not raised—whether text messages constituted calls. Courts have appropriately disregarded these authorities as a result. *See Davis*, 2025 WL 2491195, at *2.

Third, Plaintiff's theory rests on, at best, an idiosyncratic interpretation. Plaintiff turns to acontextual dictionary definitions, while disregarding *common meaning*. Plaintiff also argues throughout that statutes must evolve with technology. While it is true that technologies evolve—an iPhone is still a telephone, even if it did not exist in 1991—the meaning of telephone call has not. A text message was not a telephone call in 1991, nor is it today. Common meaning controls.

Plaintiff's focus on other statutory terms is similarly misguided. Plaintiff turns to the fact that Subsection 227(b) applies to pagers. The TCPA's application to pagers—which *require* telephone calls—matters not. Plaintiff likewise points to the term "telephone solicitation," which encompasses "telephone call or message," suggesting the TCPA's coverage of text messages has been hiding in plain sight for decades. This is meritless. "Message" refers to prerecorded voice messages, as established by the consistent use of that term throughout the statute.

Plaintiff also errs in turning to broad policy rationales. The Supreme Court recently rejected another attempt to use policy rationales to expand the TCPA. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). Even where the TCPA may be outdated, it is up to Congress alone to update it. *Id.* Plaintiff's interpretation is also absurd. By Plaintiff's argument, a "call" is *any* attempt to communicate on a phone, encompassing most modern outreach; this is clearly self-defeating.

Fourth, Plaintiff insists this Court must defer to the FCC, arguing 47 U.S.C. § 227(c) acts as a broad delegation to the FCC. This, too, is without merit. While Congress may "expressly delegate[] to an agency the authority to give meaning to a particular statutory term," *Loper Bright*, 603 U.S. at 394 (cleaned up), Congress did not give the FCC authority here redefine a "telephone call" or expand the private right of action under 47 U.S.C. § 227(c)(5).

The fact remains that it is for Congress, and not Plaintiff, to update the TCPA if appropriate. *See Facebook*, 592 U.S. at 409. Plaintiff did not receive any telephone calls and thus has no claim.

2

## DISCUSSION

I.   **PLAINTIFF EFFECTIVELY IGNORES SUPREME COURT PRECEDENT.**

Plaintiff treats the Supreme Court's opinions in *Loper Bright* and *McLaughlin Chiropractic* as though they never happened, effectively relegating these authorities to the final section of his opposition brief. (*See* Dkt. 35 at 23-25.) This is a fundamental mistake.

The Supreme Court cleared the interpretive underbrush by eliminating *Chevron* deference and removing the Hobbs Act as a hurdle to statutory interpretation in private actions. *See Loper Bright*, 603 U.S. at 412; *McLaughlin Chiropractic v. McKesson Corp.*, 606 U.S. 146, 149 (2025). These decisions result in a clear path. This Court no longer defers to, and is not bound by, agency interpretations of the TCPA. The goal, rather, is to independently reach ***the best*** interpretation of the statutory term at issue. *See Loper Bright*, 603 U.S. at 400 ("[I]f it is not the best, it is not permissible."). As the Supreme Court reminds, "statutes, no matter how impenetrable, do—in fact, must—have a single, best meaning. That is the whole point of having written statutes; every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

By ignoring these decisions, Plaintiff sets his eyes on finding plausible or permissible alternative interpretations of the isolated term "call"—appearing to intentionally avoid the term at hand here, "**telephone** call"—rather than the *best* interpretation. (*See, e.g.*, Dkt. 35 at 8, 12, 13 [turning to broad dictionary definitions].). Plaintiff thus misapprehends the import of the recent wave of cases finding that the term "telephone call" ***does not*** include text messages. As one Central District of Illinois court noted, while the plaintiff's position may be "an eminently reasonable one," the Supreme Court instructs that "in the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible." *Jones*, 792 F. Supp. 3d at 901 (cleaned up). This Court should follow this wave of cases and similarly rule that the best interpretation of the term "telephone call"—particularly as intended in 1991—does not include text messages.

3

Congress alone (and not Plaintiff) can alter the TCPA. *Loper Bright*, 603 U.S. at 403 ("The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes," and noting Congress can amend the statute if it disagrees); *Jones*, 792 F. Supp. 3d at 901.

## II. THE PLAIN LANGUAGE OF THE TCPA ENDS THIS INQUIRY.

### A. A Text Message Is Not a Telephone Call.

Congress did not intend in 1991 the term "telephone call" to encompass a form of *written* communication yet to exist. The meaning of a "telephone call" has not mysteriously changed in the last 30 years; "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400 (internal quotations and citation omitted). Plain language ends the inquiry, for the reasons detailed in Shein's Motion. *See Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 831 (7th Cir. 2023) ("We start and end with the plain language of the statute.").

As the Court in *Jones* put it, "under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones*, 792 F. Supp. 3d at 899; *see also Davis*, 2025 WL 2491195, at *1 (finding no one would refer to a "text message" as a telephone call then or now); *Sayed*, 2025 WL 2997759, at *2 ("[A] 'telephone call' and a 'text message' are separate and distinct forms of communication."); *Dilanyan v. Hugo Boss Fashions*, No. 25-cv-05093, Dkt. 35 at 3 (C.D. Cal. Dec. 3, 2025) (finding plain language resolves the issue, but certifying the issue for interlocutory appeal in light of Ninth Circuit case law). Plaintiff cannot overcome the statute's plain language.

Congress also agrees a text message is not a telephone call. As Shein noted in its Motion, Congress amended the TCPA in 2018, distinguishing text messages from telephone calls under Section 227(e). *See* 47 U.S.C. § 227(e)(8)(A)-(B). Congress ***did not*** amend Subsection 227(c) to include text messages. *See El Sayed*, 2025 WL 2997759, at *2 ("[T]he term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction.") (citing 47 U.S.C. § 227(e)).

4

Plaintiff asserts that Section 227(e) portrays a "'text message' as something that comes from a 'caller,' just like a traditional voice call does." (Dkt. 35 at 22.) Subsection 227(e) does not use "caller" in this manner. It speaks to "caller identification services," which in turn is defined referring to "<u>a call made using a voice service</u> *or* <u>a text message sent using a text messaging service</u>." 47 U.S.C. § 227(e)(8)(A) (emphasis added). This proves that Congress, like everyone else, views a call and a text message as entirely separate forms of communication.

Were Plaintiff's boundless view of a "call" correct—that is, that a call encompasses any communication received on a phone—there would be no reason for Congress to separately speak to text messages at all. In a statute "different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). It would be nonsensical to read "call" to swallow "text message" in Subsection 227(c), but then treat text messages as separate in Subsection 227(e).[1] *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage . . . .'"). Congress clearly understands the distinction between calls and texts and remains free to further amend the statute.

B.    **Plaintiff's Effort in Statutory Interpretation Is Misguided.**

i.    *Plaintiff's reliance on pre-Loper and McLaughlin cases is meritless.*

Throughout Plaintiff's brief, he misleadingly cites cases out of context, portraying the issue at hand as settled. This practice is questionable in its own right, and undercuts Plaintiff's view.

Plaintiff turns to *Warciak v. Subway*, 949 F.3d 354 (7th Cir. 2020) for the proposition that text messages qualify as telephone calls. (*See* Dkt. 35 at 9.) The *Warciak* decision (i) pre-dated

---

[1] Plaintiff cites a line from the Consolidated Appropriations Act that does not appear in the TCPA, indicating the caller identification rules should not be construed to affect the FCC's TCPA orders. (Dkt. 35 at 22.) Even if this line applied generally, it would not apply here. The Act was passed in 2018. The FCC did not construe Subsection 227(c) to include text messages until *2023*. *In the Matter of Targeting & Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256 (2023).

5

*Loper Bright* and *McLaughlin Chiropractic*, and (ii) did not involve a challenge to the issue of whether text messages qualified as telephone calls. The timing of *Warciak* is critical because prior to *McLaughlin Chiropractic*, no party could have challenged the FCC's view. *See Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 642 n.3 (N.D. Ill. 2019) ("[A]t this time, the FCC's final orders bind the Court under the Hobbs Act."). Indeed, *Warciak* rests on the Supreme Court's *Campbell-Ewald* decision—another case Plaintiff turns to (Dkt. 35 at 11)—wherein the Supreme Court noted the issue was "undisputed." *Warciak*, 949 F.3d at 357 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016)). Again, at that time, it would not have been disputed.

Plaintiff also turns to *Hulce v. Zipongo* for the notion that the Seventh Circuit has treated a text message as a call post-*McLaughlin*. (Dkt. 35 at 11.) This is false. The "sole question" in *Hulce* was whether the outreach qualified as a solicitation. *See Hulce v. Zipongo Inc.*, 132 F.4th 493, 497 (7th Cir. 2025) (evaluating plaintiff's appeal from summary judgment and never evaluating this issue). The *Hulce* opinion evaluated a trial court decision issued in March of 2024 (roughly three months before *Loper Bright* and more than a year prior to *McLaughlin Chiropractic*).

This Court should attribute no weight to these decisions, having no bearing on the analysis at hand here. *See, e.g.*, *Davis*, 2025 WL 2491195, at *2 (rejecting reliance on cases like *Campbell-Ewald* where the disputed issue was never analyzed).

    ii.  ***Dictionary definitions taken out of context do not aid the analysis.***

Plaintiff insists "the word 'call' in the TCPA refers to any attempt to communicate by telephone, including text messages." (Dkt. 35 at 8.) Plaintiff turns exclusively to the dictionary definition of "call" in hopes to persuade. (*Id.*) Plaintiff's view suffers from multiple problems.

<u>First</u>, the Seventh Circuit has warns that because "[d]ictionary definitions are acontextual," they "must be used as sources of statutory meaning only with great caution." *CFTC v. Worth Bullion Group*, 717 F.3d 545, 550 (7th Cir. 2013) (internal quotations and citation omitted); *see*

6

*also United States v. Johnson*, 875 F.3d 360 (7th Cir. 2017) (same). Dictionary definitions only serve as a "helpful resource in ascertaining the *common meaning* of terms that a statute leaves undefined." *CFTC*, 717 F.3d at 550 (emphasis added). Plaintiff's avoidance of the phrase "telephone call"—the actual statutory term at hand here—throughout its Opposition is telling and intentionally misleading, removing critical context. 47 U.S.C. § 227(c)(5). An acontextual dictionary definition does not change the fact that no user of the English language, particularly in 1991 much less now, refers to a text message, as a telephone call.

Plaintiff implores this Court to find the TCPA employs a *sui generis* lexicon, using the term "call" to broadly embrace communication mediums yet to exist. (*See* Dkt. 35 at 8-9, 12-13.) This is untenable. Plaintiff provides not even legislative history suggesting "telephone call" carried an esoteric meaning including all outreach received on a phone. *See Sayed*, 2025 WL 2997759, at *2 (turning to "common American English"). Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001). It would make no sense for Congress to hide within "telephone call" all communication forms (now and in the future) received on a handset. Congress remains free to speak clearly and amend the TCPA to include text messages.

<u>Second</u>, as Plaintiff's cited authorities make clear, courts have generally looked to dictionary definitions only to assess whether the FCC's interpretation was reasonable—and therefore entitled to *Chevron* deference. (*See* Dkt. 35 at 8); *see, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (concluding "we must defer to the agency"). But again, *Loper Bright* makes clear this Court's task is not to assess the reasonableness of the FCC's view; it is to identify the *best* interpretation of the statute. *See Loper Bright*, 603 U.S. at 400 ("In the business of statutory interpretation, if it is not the best, it is not permissible."); *see also Jones*, 792 F. Supp. 3d at 901 (rejecting a "reasonable" interpretation in favor of the best interpretation).

7

Third, Plaintiff's view would subject most modern communications to the TCPA. Plaintiff concedes his argument could encompass modern messaging apps. (*See* Dkt. 35 at 18 [indicating it is up to the FCC to include these apps].) Plaintiff seeks to impose some vague limit on his interpretation by contending only outreach received at a "telephone number" would qualify. (*Id.*) The irony in this argument is palpable. Plaintiff reads "telephone call" to encompass myriad forms of communication, but argues "telephone number" must be narrow. Plaintiff's effort to narrowing his own interpretation shows the absurdity of his argument. Plaintiff cannot interpret "telephone call" broadly and "telephone number" narrowly. Nor does Plaintiff address how this Court should contend with messaging platforms linked with phone numbers (such as Google Voice and Whatsapp). Both terms must be interpreted as written and understood in 1991.

Plaintiff ignores the principle that "[o]ne can properly attribute to legislators the reasonable minimum intention to say what one would ordinarily be understood as saying, given the circumstances in which it is said." *Costello*, 666 F.3d at 1044 (cleaned up). It defies reason that Congress would have attributed anything other than the *common meaning* of a "telephone call" in 1991 (or, indeed, now). *See, e.g.*, *Davis*, 2025 WL 2491195, at *1.

### iii. Subsection 227(b) does not impact the analysis.

Plaintiff contends his expansive reading of "telephone call" is supported by the use of the term "call" in Subsection 227(b), the TCPA's provision regulating autodialed and prerecorded calls. Specifically, Plaintiff contends the term "call" must encompass text messages because Subsection 227(b) prohibits making certain calls to a "any telephone number assigned to a paging service . . ." (Dkt. 35 at 9, quoting 47 U.S.C. § 227(b).) There are two errors with this argument.

First, Plaintiff starts from the premise that Subsection 227(b) demonstrates that the term "call" covers more than just voice calls. The issue is not whether a telephone call must include spoken words—common experience proves that many phone calls are unanswered, yet remain

8

telephone calls—but whether a text message is a telephone call. It is not; these are two different forms of communication. *See Davis*, 2025 WL 2491195 at *1; *El Sayed*, 2025 WL 2997759, at *2.

Second, and similarly, that a separate TCPA subsection covers autodialed and prerecorded calls to a paging service is not germane as to whether the term "telephone call" encompasses text messages. At the outset, Plaintiff conflates how a paging device would *display* outreach with how that outreach is *made*—namely, by an *actual telephone call*. (*See* Dkt. 35 at 9.) The purpose of Section 227(b) was to prohibit autodialers from being used to make calls to blocks of numbers, which could "simultaneously tie up all the lines" for hospitals, businesses, pagers, and cell phones. *Facebook*, 592 U.S. at 399-400, 405-06. This subsection has nothing to do with text messages.

Additionally, Subsection 227(c)(5) speaks to "telephone calls" as opposed to the term "call" used in Subsection 227(b). *See, e.g.*, *Davis*, 2025 WL 2491195, at *2 (noting the distinction in statutory subsections 227(b) and 227(c)(5)). Indeed, Subsection 227(b)'s application to pagers highlights that the TCPA was not drafted to encompass future modes of communication. *See, e.g.*, *Facebook*, 592 U.S. at 409 (rejecting broad interpretation of a "senescent" TCPA statutory term).

Plaintiff assumes Subsection 227(b) applies to text messages, and then uses this assumption to bootstrap his argument as to Subsection 227(c)(5). (*See* Dkt. 35 at 9, 20-21.) This premise fails. Plaintiff does not establish the term "call" in Subsection 227(b) encompasses text messages, or that it controls the interpretation of Subsection 227(c)(5).[2]

### iv.   Plaintiff plainly misconstrues the term "telephone solicitation."

Plaintiff's opposition engages in a critical interpretive error in hoping to construe the term "telephone call" to encompass text messages. Plaintiff contends that the definition of "telephone

---

[2] Plaintiff asserts Shein "do[es] not dispute that 'call' covers text messages" under Section 227(b). (Dkt. 35 at 20.) Shein did not thoroughly brief Subsection 227(b), as it is not at issue here. Even if it was, Plaintiff is wrong. As detailed *supra*, Plaintiff fails to establish Subsection 227(b) applies to text messages.

9

solicitation," which refers to "telephone call or message" has been hiding text messages in plain sight for more than thirty years. (*See* Dkt. 35 at 1, 12-13.) This argument is meritless.

It is true the regulation at hand, 47 C.F.R. § 64.1200(c)(2), covers "telephone solicitations," and that this term is defined to include "telephone call or message." 47 U.S.C. § 227(a)(4). Plaintiff thus contends that "message" must encompass text messages. (*See* Dkt. 35 at 13 [looking to the dictionary definition of "message"].) This definition was adopted in 1991, prior to the advent of text messages. "Message" refers not to text messages, but *prerecorded voice messages*. *See Jones*, 2025 WL 2042764, at *4 ("Section 227(a)(4) does not refer to 'text message'; 'telephone call or message' could not be interpreted in 1991 to telephone call or text message . . . .").

The term "message" appears throughout the TCPA, elucidating its meaning. 47 U.S.C. § 227(b)(1)(B) (prohibiting calls "using an artificial or prerecorded voice to deliver a message . . ."); 47 U.S.C. § 227(d) (referring to fax messages and "artificial or prerecorded voice messages"); *Azar v. Allina Health Servs*, 587 U.S. 566, 576 (2019) ("[W]hen Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout."). Plaintiff cannot rely on one word out of context. Plaintiff's authority *Pepper v. GVG Capital* commits this identical error. (Dkt. 35 at 13.) Indeed, as one court noted, "Congress's use of the phrase 'telephone call or message' . . . shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis*, 2025 WL 2491195, at *2; *Dilanyan*, No. No. 25-cv-05093, Dkt. 35 at 5 (same).

Nor can Plaintiff turn to the definition of "telephone solicitation" to expand the forms of communication covered under Subsection 227(c)(5). (*See* Dkt. 35 at 13.) Plaintiff argues that the definition of "telephone solicitation" suggests the content of the outreach alone, and not how the outreach was made, controls. This would epitomize the tail wagging the dog. The Supreme Court recently reminded that it is improper to use the broad concerns motivating the TCPA to expand its

10

reach. *See, e.g.*, *Facebook*, , 592 U.S. 395, at 141 ("That Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."). Similarly here, that Congress was broadly concerned about telemarketing does not mean that it adopted an idiosyncratic interpretation of the commonplace term "telephone call." *See, e.g.*, *Davis*, 2025 WL 2491195, at *2 ("[H]owever Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'") (quoting 47 U.S.C. § 227(c)(5)).

   **C.**  **Plaintiff Seeks to Craft a New Private Right of Action for Text Messages.**

Plaintiff next analogizes to older statutes applying to new technologies, arguing statutes can apply beyond the specific application envisioned at the time of enactment, and for that reason the TCPA should encompass text messages. (Dkt. 35 at 1-2, 15-16.) While it is certainly true that older statutes may encompass applications not yet envisioned, that is not what Plaintiff seeks here.

Plaintiff is not merely asking to apply the TCPA to evolving technology, he is seeking to amend the law. The apt analogy here would be applying the TCPA to calls received on or placed from an iPhone or a smartwatch. The means by which we place and receive telephone calls have evolved since 1991. But while telephones have evolved, *the meaning of a telephone call has not*. A text message was not a telephone call in 1991, and it is certainly not considered a telephone call now. *See Davis*, 2025 WL 2491195, at *1. Plaintiff is not asking, to use his own example, to apply an old vehicle statute to a modern car; he is asking to apply an old vehicle statute to an airplane.

The Supreme Court provided a roadmap in *Facebook*, which rejected a substantively identical effort by a plaintiff to expand a key statutory term in the TCPA to mold the TCPA to modern times. There, the Court rejected the plaintiff's reading, holding "'[s]enescent' as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best

11

reading of § 227(a)(1)(A). This Court must interpret what Congress wrote . . . ." *Facebook*, 592 U.S. at 409. Equally here, it is Congress's purview to amend the TCPA, not Plaintiff's. Evolving communications mediums is no grounds to eschew the *best* reading of "telephone call."

Plaintiff's own case law evidences his error. Plaintiff cites to *Wisconsin Cent. Ltd v. United States*, which evaluated whether stock options constituted "money remuneration" under an older railroad retirement statute. *See* 585 U.S. 274 (2018). The Court rejected the government's expansive view of "money"—which the government supported with a dictionary definition—as "idiosyncratic." *Id.* at 280-81. The Court similarly rejected policy arguments. *Id.* at 283-84. Addressing the key issue here, the Court noted that while the term "money" may mold over time, stock options "were not then—and are not now—[money remuneration]." *Id.* at 284.

The same holds true here. The way in which telephone calls are placed have changed, but a text message was not a telephone call then and is not now. *See Davis*, 2025 WL 2491195, at *1.

### D.     Plaintiff's Policy Arguments Cannot Overcome Plain Language.

Plaintiff focuses throughout his brief on policy arguments. Namely, that covering text messages fits the overall policy goals of the TCPA and the do-not-call regulations. (*See* Dkt. 35 at 1, 4, 13-14.) Policy prerogatives, however, cannot supplant or alter the plain language of the TCPA.

Policy arguments and "gestures at Congress' broad privacy-protection goals" are no basis to "eschew[] the best reading" of the TCPA. *Facebook*, 592 U.S. at 408-09 (cleaned up); *see also Loper*, 603 U.S. at 403 ("Courts interpret statutes . . . based on the traditional tools of statutory construction, not individual policy preferences."). The fact is the private right of action is limited to recipients of "telephone calls." 47 U.S.C. § 227(c)(5). Plaintiff cannot overcome this language by turning to policy. (*See* Dkt. 35 at 13); *see also Hulce*, 132 F.4th at 500 ("Hulce's appeals to the remedial nature of the TCPA or selective quoting of the legislative history do not carry the day."). Even if the TCPA more broadly regulates telephonic outreach, the private right of action at issue

is limited. *See Davis*, 2025 WL 2491195, at *3. Whatever the reason for Congress's limitation, it is not the purview of this Court to "join this guessing game." *Wisconsin Cent.*, 585 U.S. at 282.

A text message is not a telephone call and is not actionable under Section 227(c)(5), unless and until Congress, in its sole province, amends the TCPA. *See Facebook*, 592 U.S. at 409 ("This Court must interpret what Congress wrote . . . ."); *Jones*, 2025 WL 2042764, at *5 ("It is for Congress to respond to the issues presented in this case . . . .).

### III.     FCC IS NOT EMPOWERED TO ALTER THE DECISIONS CONGRESS MADE.

Finally, Plaintiff contends this Court should defer to the FCC, arguing "Congress expressly delegated authority to the FCC to 'fill up the details'" of the do-not-call provision through 47 U.S.C.§ 227(c). (Dkt. 35 at 23, quoting *Loper Bright*, 603 U.S.at 395.) Plaintiff is clearly wrong.

<u>First</u>, the Supreme Court holds that agency interpretations are afforded appropriate *respect*, not deference. *See McLaughlin Chiropractic*, 606 U.S. at 155 ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.") (citing *Loper Bright*, 603 U.S. at 402); *Davis*, 2025 WL 2491195, at *4 (correcting the plaintiff).

<u>Second</u>, the concept Plaintiff speaks to—where Congress engages in express delegation to an agency to define a term—arises where "statutes 'expressly delegate to an agency the authority to give meaning to a particular statutory term . . . ." *Loper Bright*, 603 U.S. at 394–95 (cleaned up). The TCPA gives the FCC authority to implement the do-not-call regulations. The TCPA does not give the FCC the authority to alter the meaning of or define the term "telephone call." *See id.* at 395 n.5 (providing examples where agencies are expressly instructed to define certain terms).

Plaintiff's own case law again highlights the defect in Plaintiff's argument. Plaintiff cites to *U.S. Telecom Ass'n v. FCC*, which involved 47 U.S.C. § 332(d)(2), a provision *specifically* giving the FCC definitional authority. *See* 825 F. 3d 674, 718 (D.C. Cir. 2016). No such provision

13

exists here. The FCC was instructed to consider "initiat[ing] a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). This does not authorize the FCC to alter or expand the private right of action found at Subsection 227(c)(5). *See, e.g.*, *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025) ("After all, a generic grant of rulemaking authority to fill gaps . . . does not allow the FCC to alter the specific choices Congress made.") (cleaned up).

Third, the FCC's initial expansion of the term "call" to include "text message" did not occur under Subsection 227(c). *See, e.g.*, *Jones*, 2025 WL 2042764, at *4 ("[T]he 2003 Order explicitly references only Section 227(b)."). And when the FCC addressed Subsection 227(c) in 2023, it made no reference to the term "telephone call" as that term is used in Subsection 227(c)(5). The FCC addressed the do-not-call registry and engaged in no statutory analysis at all. *See In the Matter of Targeting & Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256-57 (2023) [hereinafter the "2023 Order"] (discussing policy prerogatives like the ease of enforcement and the desire to have uniformity with its interpretations under 227(b)).

Fourth, and contrary to Plaintiff's argument, (Dkt. 35 at 25) the FCC's view has no persuasive value. As an initial matter, the Supreme Court holds that "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statutes meaning." *Loper Bright*, 603 U.S. at 394. The FCC did not determine a "call" could include a text message under Subsection 227(b) until 2003, and did not issue its view as to Subsection 227(c) until 2023, long after the TCPA's passage.[3] As a more substantive matter, the FCC's analysis of the issue at hand has been bereft at best. In neither the

---

[3] Plaintiff suggests the FCC's 2003 interpretation was contemporaneous. (Dkt. 35 at 10-11.) A twelve year gap is not contemporaneous. The relevant measure is contemporaneous with the passage of the statute, not contemporaneous with the popularity of SMS, as Plaintiff suggests. (*Id.*)

14

2003 nor 2023 Orders did the FCC engage in substantive statutory analysis. *See* 2003 Order, 18 F.C.C. Rcd. at 14115 (simply stating, without analysis, the term "call" included text messages); 2023 Order, 38 F.C.C. Rcd. at 12257 (turning to policy rationales, like ease of enforcement).

Ultimately, plain language and common meaning control. A text message is not a telephone call. As one court put it, "[o]ne can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text." *Davis*, 2025 WL 2491195, at *4 (internal citation omitted). Whatever respect the FCC's view is entitled to (and it is not much), "the court's role is not to look beyond clear language to ascertain Congress's purpose." *Id.* at *3; *see also Jones*, 2025 WL 2042764, at *5 ("It is not for a court to legislate by reading into the TCPA something that is not there."). Plaintiff's "quarrel is with Congress," *Facebook*, 592 U.S. at 409; this case should be dismissed.

### IV. PLAINTIFF'S AUTHORITY IS UNPERSUASIVE.

Shein is aware that, while multiple cases have properly concluded Subsection 227(c)(5) does not apply to text messages, other cases have sided with Plaintiff. Plaintiff points to cases like *Mujahid v. Newity, LLC*, No. 25-cv-8012, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) and *Wilson v. MEDVIDI Inc.*, No. 25-cv-03996, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025). These cases are unpersuasive and should be disregarded, for the reasons detailed *supra*. Namely, (i) these courts rely heavily on the dictionary definition of "call;" (ii) these courts turned to decisions (including pre-*Loper* and *McLaughlin*) assuming without analyzing that a text message was covered under Subsection 227(b); (iii) these courts improperly rely on policy; and (iv) these courts were persuaded by FCC interpretations that involved no substantive analysis. Most notably, these courts do not—and did not endeavor to—reach the *best* interpretation, which is now this Court's lodestar.

### CONCLUSION

Shein respectfully requests that this Court dismiss this case with prejudice.

15

Dated: December 10, 2025 Respectfully submitted,

SHEIN DISTRIBUTION CORPORATION

By: /s/ Mark S. Eisen

David M. Krueger
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square
Suite 4900
Cleveland, OH 44114
440-313-2974
dkrueger@beneschlaw.com

Mark S. Eisen (admitted *pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive
Suite 1600
Chicago, IL  60606-4637
312-506-3442
meisen@beneschlaw.com

Counsel for Shein Distribution Corporation

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December, 2025, I electronically filed a true and correct copy of the above and forgoing document with the Southern District of Indiana using the CM/ECF system.

By: /s/Mark S. Eisen<br>Mark S. Eisen